UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division


SANDRA MARIETTA ROBINSON,

        Claimant,

    v.                                       2:08CV495

MICHAEL J. ASTRUE, COMMISSIONER,
Social Security Administration,

        Defendant.


## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

       Claimant brought this action under 42 U.S.C. § 405(g) seeking judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claim for a period of disability and disability insurance benefits ("DIB") under the Title II of the Social Security Act.   This action was referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72(b) of Federal Rules of Civil Procedure.   For the reasons stated herein, the Court recommends that the final decision of the Commissioner be affirmed.

## I.   PROCEDURAL BACKGROUND

       Claimant filed an application for DIB on September 16, 2005. In her application, claimant originally alleged disability beginning June 1, 2003 (R. 74-76)[1], due to a lower back injury, high blood pressure, diabetes, high cholesterol, diverticulitis, arthritis, and leg and hip problems (R. 82).   At the administrative hearing, claimant amended her

---

     [1]"R." refers to the administrative record.

alleged onset date of disability to September 16, 2005, the date of her application.  (R. 355-56).  The Commissioner denied claimant's application initially (R. 50-52), and upon reconsideration (R. 43-45). Claimant then requested an administrative hearing.  (R. 42).  The hearing was conducted January 9, 2008.  (R. 14).

On February 1, 2008, Administrative Law Judge ("ALJ") William T. Vest, Jr. issued a decision finding that claimant was not disabled within the meaning of the Social Security Act, and denying claimant's claim for DIB.  (R. 14-23).  On August 19, 2008, the Appeals Council of the Office of Hearings and Appeals of the Social Security Administration denied review of the ALJ's decision (R. 6-8), thereby making the ALJ's decision the final decision of the Commissioner.

Pursuant to 42 U.S.C. § 405(g), on October 20, 2008, claimant commenced the instant action seeking judicial review of the Commissioner's final decision.  This case is now before the Court for disposition of the parties' cross-motions for summary judgment.

## II.  FACTUAL BACKGROUND

Claimant was born January 11, 1954, and, on the date of alleged onset, was an "individual closely approaching advanced age" pursuant to 20 C.F.R. § 404.1563(d).  (R. 21).  In her application, claimant listed her weight as 190 pounds and her height as five feet. (R. 82).  Claimant completed high school (R. 85), and worked as a human service technician at a state psychiatric hospital from 1980 to 2003 (R. 83).  Claimant attempted to work at Wal-Mart in January 2007, but was only able to work for two days because the job required her to stand. (R. 357).

During the period of time relevant to this action, claimant lived with her family in a house.  (R. 87).  Her daily activities included housecleaning, vacuuming, washing dishes, dusting, making the bed, and doing laundry.  (R. 89, 359-60).  Claimant also prepared food, helped her mother babysit four children, took care of pets, and shopped. (R. 87-88, 361).  Claimant went outside every day, walking or by car. (R. 90).  She regularly went to church, the grocery store, clothing stores, and restaurants.  (R. 91).

Claimant moved from New Jersey to the Eastern Shore of Virginia in 2004. (R. 359).  In Virginia, claimant's primary care physician is John Whittaker, M.D., and Anthony J. Adrignolo, M.D., treats claimant's orthopaedic problems.  Claimant has a history of degenerative disc disease in her lumbar spine, peripheral vascular disease of the right leg, diabetes, diverticulosis, high blood pressure, and obesity.

On October 20, 2005, claimant complained of numbness in her legs while walking, diffuse low back pain, and some pain over the right troch bursa.  (R. 153).  Dr. Adrignolo reported that claimant's straight leg raising test was negative, and her gait and balance were mildly antalgic.  (R. 153).  Radiological studies in October 2005 showed that claimant had a thoracic aneurysm, severe calcification in her arteries, and degenerative changes in her low back (R. 152-53, 155, 178-79, 249), with no fractures or dislocations, or significant arthrosis in her hips (R. 155).  On November 1, 2005, Dr. Adrignolo again reported that claimant's straight leg raising test was negative and her gait and balance were normal.  (R. 151). Claimant complained of numbness in the L4-L5 distribution, but she could feel light touch.  (R. 151).

On December 30, 2005, Dr. Adrignolo performed a lower extremity arterial Doppler study on claimant and found no evidence of any hemodynamically significant lower extremity arterial occlusive disease. (R. 176). On January 23, 2006, Dr. Dayton-Jones, a pain management specialist, examined claimant and reported that she had mild sacroiliac joint tenderness and good range of motion. (R. 166, 247). Claimant was given lumbar and sacroiliac injections to reduce her symptoms. Id.

On March 7, 2006, Dr. Dayton-Jones reported that claimant complained of an increase in her pain level and, upon examination, had right sciatic nerve tenderness, but good range of motion. (R. 245). Moreover, claimant was neurovascularly intact. (R. 245). Claimant underwent another lumbar epidural steroid injection, and had a right sciatic nerve block. (R. 245).

On March 24, 2006, Dr. Whittaker completed a medical assessment of claimant's ability to do work-related activities. Dr. Whittaker assessed that, due to claimant's degenerative disc disease, she could lift/carry a maximum of forty pounds, twenty-five pounds occasionally and ten pounds frequently, and that claimant had returned to full weight bearing status. (R. 328-30). He further assessed that claimant could stand for two hours in an eight-hour workday (15 minutes without interruption); sit for four hours in an eight-hour workday (one hour without interruption); and could never climb, crouch, kneel, or crawl, but could occasionally balance and stoop. (R. 329). Dr. Whittaker also indicated that claimant's ability to push and pull were affected by claimant's impairment because these activities increased her back pain. (R. 330). Dr. Whittaker also assessed that claimant should

be restricted from heights, moving machinery, temperature extremes, humidity, and vibration. (R. 330).

On August 29, 2006, Dr. Dayton-Jones performed a right sciatic nerve block on claimant, who had previously been using nonsteroidal anti-inflammatory medication to relieve her back discomfort. (R. 232). Claimant complained of experiencing increased pain during the previous two weeks. (R. 232). Dr. Dayton-Jones reported that claimant had marked right sciatic nerve tenderness on palpation and decreased range of motion, but was intact neurovascularly. (R. 232).

Approximately six weeks later, on October 16, 2006, claimant presented with increased lower back pain and stiffness in her hip. Dr. Dayton-Jones administered a lumbar epidural steroid injection and a bilateral greater trochanteric bursa injection. (R. 224). Claimant indicated that she had been doing extremely well until about ten days prior when her pain returned abruptly. (R. 224). Dr. Dayton-Jones noted that claimant had marked generalized lumbar tenderness with decreased range of motion, and marked generalized bilateral greater trochanteric bursal tenderness. (R. 224). On November 21, 2006, claimant complained of recurrent low back to right hip pain. (R. 216). Claimant had been doing well until a recent trip to Philadelphia during which she did a great deal of walking. (R. 216). On physical examination, Dr. Dayton-Jones noted marked generalized tenderness and right greater trochanteric tenderness on palpation. (R. 216). Claimant received a lumbar epidural steroid injection and a right greater trochanteric bursa injection. (R. 216).

On May 9, 2007, claimant went to the emergency room complaining of facial swelling. (R. 253). She was diagnosed with pneumonia and allergic urticaria. A musculoskeletal examination revealed no extremity tenderness, full range of motion, and no edema in claimant's arms or legs. (R. 255). Claimant returned to the emergency room on May 23, 2007, and was admitted to the hospital. (R. 264-302). During this stay, she was diagnosed with significant vascular disease. (R. 306, 314).

On July 16, 2007, claimant reported bilateral calf claudication (cramping), left worse than right, at fairly short distances. (R. 306). A CT scan and non-invasive testing revealed significant peripheral vascular disease, possibly at the aortoiliac level. (R. 306). On August 2, 2007, it was recommended that claimant undergo an aortic endarterectomy (surgical removal of plaque from a blocked artery). (R. 326). The surgery was performed on August 28, 2007. (R. 364). Claimant reported that the procedure improved her condition "a little bit." (R. 358).

On December 7, 2005, Robert F. Castle, M.D., a state agency physician, reviewed the evidence and assessed that claimant has the residual functional capacity (RFC) to occasionally lift/carry twenty pounds; frequently lift/carry ten pounds; stand/walk for a total of six hours; sit for six hours in an eight-hour workday; and could push/pull and perform all postural maneuvers without limitation. (R. 156-62). In his narrative discussion, Dr. Castle noted that claimant's high blood pressure, diverticulitis, and diabetes were being controlled with medications and diet. (R. 162). Dr. Castle noted that, when walking,

standing, kneeling, or climbing stairs, claimant had normal gait and
balance, full range of motion of her extremities, and full muscle
strength. (R. 162). Dr. Castle states that, while claimant may have had
some back pain, it does not limit her ability to stand and walk
throughout a normal workday. (R. 162). On April 11, 2006, M. Calesh,
M.D., a state agency physician, completed a RFC assessment finding that
claimant's functional limitations were consistent with those found by Dr.
Castle. (R. 168-74).

Testifying as an impartial vocational expert (VE), Jane Howard
Reed testified that jobs were available in the state and national economy
to an individual with claimant's age, education, and work experience who
could lift and carry ten pounds frequently and twenty pounds
occasionally; sit for eight hours and walk/stand six hours in an eight-
hour day with a sit/stand option; occasionally stoop or bend, but not
climb, push, or pull with the lower extremities. (R. 367). Mr. Reed
testified that such a person could perform jobs such as cashier (3,000
positions locally, 200,000 nationally); packer (1,500 positions locally,
150,000 nationally); and inspector (1,000 positions locally, 75,000
nationally). (R. 367-68).

### III.  STANDARD OF REVIEW

In reviewing a decision of the Commissioner denying benefits,
the Court is limited to determining whether such decision was supported
by substantial evidence on the record and whether the proper legal
standard was applied in evaluating the evidence. 42 U.S.C. § 405(g)
(2008); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (per

curiam); <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990).[2]
Substantial evidence is "such relevant evidence as a reasonable mind
might accept as adequate to support a conclusion." <u>Richardson v.</u>
<u>Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consol. Edison Co. of N. Y.</u>
<u>v. NLRB</u>, 305 U.S. 197, 229 (1938)). It consists of "more than a mere
scintilla" of evidence, but may be somewhat less than a preponderance.
<u>Laws v. Celebrezze</u>, 368 F.2d 640, 642 (4th Cir. 1966).

In reviewing for substantial evidence, the Court does not
undertake to re-weigh conflicting evidence, make credibility
determinations, or substitute its judgment for that of the Commissioner.
<u>Craig v. Chater</u>, 76 F.3d 585, 589 (4th Cir. 1996); <u>Hays</u>, 907 F.2d at
1456. "Where conflicting evidence allows reasonable minds to differ as
to whether a claimant is disabled, the responsibility for that decision
falls on the Commissioner (or the [Commissioner's] designate, the ALJ)."
<u>Craig</u>, 76 F.3d at 589. The Commissioner's findings as to any fact, if
supported by substantial evidence, are conclusive and must be affirmed.
<u>Perales</u>, 402 U.S. at 390. Thus, reversing the denial of benefits is
appropriate only if either the ALJ's determination is not supported by
substantial evidence on the record, or the ALJ made an error of law.
<u>Coffman v. Bowen</u>, 829 F.2d 514, 517 (4th Cir. 1987).

## IV. ANALYSIS

To qualify for a period of disability and DIB under sections
216(i) and 223 of the Social Security Act, 42 U.S.C. §§ 416(i) and 423,

---

[2]"The issue . . . therefore, is not whether [the claimant] is disabled, but
whether the ALJ's finding that she is not disabled is supported by substantial
evidence and was reached based upon a correct application of the relevant law."
<u>Craig v. Chater</u>, 76 F.3d 585, 589 (4th Cir. 1996) (citing <u>Coffman v. Bowen</u>, 829
F.2d 514, 517 (4th Cir. 1987)).

an individual must meet the insured status requirements of these sections, and be under a "disability" as defined in the Act. The Social Security Regulations define "disability" for the purpose of obtaining disability benefits under Title II of the Act as the:

> inability to do any substantial gainful activity[3] by reason of any medically determinable physical or mental impairment[4] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

20 C.F.R. § 404.1505(a); see also 42 U.S.C. §§ 423(d)(1)(A) and 416(i)(1)(A). To meet this definition, a claimant must have a "severe impairment"[5] which makes it impossible to do previous work or any

---

[3]"Substantial gainful activity" is work that: (1) involves doing significant and productive physical or mental duties; and (2) is done (or intended) for pay or profit. 20 C.F.R. §§ 404.1510 and 416.910. Substantial work activity is "work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." Gainful work activity is work activity done for "pay or profit, whether or not a profit is realized." Taking care of oneself, performing household tasks or hobbies, therapy or school attendance, and the like are not generally considered substantial gainful activities. 20 C.F.R. § 404.1572.

[4]"Physical or mental impairment" is defined in § 223(d)(3) of the Social Security Act as an impairment that results from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

[5]The regulations define a severe impairment as "any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities . . . ." 20 C.F.R. §§ 404.1520(c) and 416.920(c).

other substantial gainful activity that exists in the national economy.[6]
20 C.F.R. § 404.1505(a); see 42 U.S.C. § 423(d)(2)(A).

The regulations promulgated by the Social Security Administration provide that all material facts will be considered to determine whether a claimant has a disability. The Commissioner follows a five-step sequential analysis to ascertain whether the claimant is disabled. The five steps which the ALJ must follow are:

1. Is the individual involved in substantial gainful activity?

2. Does the individual suffer from a severe impairment or combination of impairments which significantly limit his or her physical or mental ability to do work activities?

3. Does the individual suffer from an impairment or impairments which meet or equal those listed in 20 C.F.R., Pt. 404, Sbpt. P, App. 1 (a "listed impairment" or "Appendix 1")?

4. Does the individual's impairment or impairments prevent him or her from performing his or her past relevant work?

5. Does the individual's impairment or impairments prevent him or her from doing any other work?

An affirmative answer to question one, or a negative answer to question two or four, results in a determination of no disability. An affirmative answer to question three or five establishes disability. This analysis is set forth in 20 C.F.R. §§ 404.1520 and 416.920. The

_____

[6]The Administration may satisfy its burden by showing that considering the claimant's residual functional capacity, age, education and work experience, the claimant is either disabled or not disabled based on medical-vocational guidelines, or "grids," published at 20 C.F.R., Pt. 404, Subpt. P, App. 2. However, technical application of the grids is not always appropriate, and thus the Commissioner must rely on the testimony of a vocational expert to determine whether an individual claimant is in fact capable of performing substantial gainful activity available in significant numbers in the economy. 20 C.F.R. §§ 416.920(f) and 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 466 (1983); SSR 83-10, 1983 WL 31251 (S.S.A.); see also infra Pt. III, Sbpt. D.

burden of proof and production rests on the claimant during the first four steps, but shifts to the Commissioner on the fifth step.  Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (citing Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992)).  The ALJ bears the ultimate responsibility for weighing the evidence.  Hays, 907 F.2d at 1456.

## A.  The ALJ's Decision

As a preliminary matter, the ALJ found that claimant met the insured status requirements of the Social Security Act through December 31, 2008.  (R. 16).  The ALJ then made the following findings under the five-part test for disability: (1) claimant has not engaged in substantial gainful activity since September 16, 2005 (the alleged onset date of disability); (2) claimant has severe impairments of degenerative disc disease of the lumbar spine and peripheral vascular disease of the right leg, 20 C.F.R. § 404.1520(c)[7]; (3) claimant's impairments (or combination of impairments) did not meet one of the listed impairments in Appendix 1; (4) claimant is unable to perform past relevant work at the medium to heavy exertional level; and (5) "there are jobs that exist in significant numbers in the national economy that [claimant] can perform."  (R. 22).

In her motion for summary judgment, claimant alleges the following errors: (1) the ALJ should have given "controlling weight" to the opinion of Dr. Whittaker, claimant's treating physician; (2) the ALJ failed to adjudicate obesity as a severe impairment at the third step of

_____

[7]The ALJ further found that all of the other impairments alleged by claimant were not severe "because they did not exist for a continuous period of twelve months, were responsive to medication, did not require any significant medical treatment, or did not result in any continuous exertional or nonexertional functional limitations."  (R. 17).

the analysis; and (3) "there is no indication that the hypothetical jobs identified by the VE were light work positions" (Doc. #13 at 7).

### B.  Weight Given to Treating Physician's Opinion

At step four of the sequential analysis, the ALJ must first calculate the claimant's RFC, which is the claimant's maximum ability to work despite her impairments.  20 C.F.R. §§ 404.1520(e) and 416.945(a)(1). After doing so, the ALJ uses that RFC to determine whether the claimant can perform her past relevant work.  20 C.F.R. § 416.945(a)(5)(i).

In the present case, the ALJ found that claimant has the RFC to perform a limited range of light work involving lifting and carrying ten pounds frequently and twenty pounds occasionally; sitting for eight hours; and standing and walking for six hours in an eight-hour day, with the option to alternate sitting and standing as needed ("sit/stand option").  (R. 21).  The ALJ further found that claimant cannot climb, and cannot engage in pushing or pulling with her lower extremities.  Id. After calculating claimant's RFC, the ALJ found that claimant is unable to perform past relevant work at the medium to heavy exertional level. Id.

Claimant contends that, in calculating her RFC, the ALJ erred by assigning equal weight to the opinion of the non-examining medical consultants and claimant's treating physician, Dr. Whittaker. Specifically, the ALJ accorded the opinion of each "some weight."  (R. 21-22).  Essentially, claimant argues that the ALJ should have given Dr. Whittaker's medical opinion "controlling weight" because Dr. Whittaker actually examined claimant on numerous occasions.  Further, claimant contends that Dr. Whittaker's specialty in family medicine and direct

patient care are more relevant than Dr. Castle's, who is a pediatrician specializing in cardiovascular disease. Claimant also accuses Dr. Cole of rendering an opinion "suspiciously similar" to that of Dr Castle's. (Doc. #13 at 5).

The ALJ has the responsibility of determining RFC, not the treating physicians. 20 C.F.R. § 416.946. In making this determination, the ALJ must consider the objective medical evidence in the record, including the medical opinions of the treating physicians and the non-examining medical consultants. Under the federal regulations and caselaw, a treating physician's opinion merits "controlling weight" if the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 416.927(d)(2); see Craig, 76 F.3d at 590. The general rule is that the opinion of a treating physician receives more weight than the opinion of the non-examining consultant. 20 C.F.R. § 416.927(d)(1). However, Fourth Circuit precedent does not require that a treating physician's testimony be given controlling weight. "[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig, 76 F.3d at 590. An ALJ must articulate "good reasons" for the weight assigned to a treating physician's opinion and address the following factors: (1) "[l]ength of treatment relationship;" (2) "[n]ature and extent of treatment relationship;" (3) degree of "supporting explanations for their opinions;" (4) consistency with the

record; and (5) the specialization of the physician. 20 C.F.R. §
416.927(d)(2)-(6).

In the present case, the ALJ determined accorded "some weight"
to Dr. Whittaker's opinion. In so doing, the ALJ noted that "the
evidence of record as well as [claimant's] testimony regarding improved
functioning and activities of daily living fails to substantiate the
degree of limitation the physician cited with respect to sitting,
standing, and walking." (R. 20). Specifically, the ALJ notes that, in
the medical assessment completed on March 24, 2006, Dr. Whittaker
indicated that claimant could perform light work involving standing and
walking for a total of two hours per day, and sitting for up to four
hours per day, with no climbing, crouching, kneeling or crawling, and
only a limited amount of pushing and pulling. According to the ALJ, this
assessment and the degree of limitation recommended is not substantiated
by the record. As noted by the ALJ:

> [Claimant] testified at the hearing that
> she helps with housework, helps her
> mother with childcare, sews and watches
> television. Consistently, in her Adult
> Function Report, [claimant] reported
> these activities, in addition to cooking
> and preparing meals, taking care of
> pets, vacuuming, doing laundry, and
> shopping for food, clothing, gifts and
> other household items. She further
> described having a variety of hobbies,
> recreational activities, and social
> activities and reported that she has no
> trouble paying attention, following
> instructions, handling stress, or
> getting along with others.

(R. 20-21). In his decision, the ALJ also cites claimant's
testimony of improved functioning. (R. 20). Having reviewed the ALJ's

report and the reasons he articulated therein, the Court finds that the ALJ supplied "good reasons" for not giving "controlling weight" to Dr. Whittaker's opinion. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Commissioner (or on the Commissioner's designate, the ALJ)." Craig, 76 F.3d at 589. Dr. Whittaker's opinion is contradicted in the record and the ALJ did not err by refusing to give his opinion controlling weight. Jones v. Sullivan, 954 F.2d 125, 128-29 (3d Cir. 1991).

## C. Obesity

In the second step of the sequential analysis, the ALJ determined that claimant's obesity was a nonsevere impairment because it does not significantly diminish her functional ability. (R. 17). Claimant contends that the ALJ failed to consider her obesity in step three of the analysis which requires a determination of whether claimant suffers from an impairment or impairments which meet(s) or equal(s) one listed in Appendix 1.[8]

Obesity was removed as a separate listing in 1999; however, the SSA still considers it to be a medically determinable impairment, the effects of which must be considered in evaluating disability. SSR 02-1P

---

[8] Appendix 1 provides a description "for each of the major body systems, impairments which are considered severe enough to prevent a person from doing any gainful activity." 20 C.F.R. §§ 404.1525(a) and 416.925(a). The impairment must have a duration of at least twelve months, unless such impairment is expected to cause claimant's death. See id.; see also 20 C.F.R. §§ 404.1509 and 416.909. Without more, a diagnosis that a claimant has an impairment listed in the Appendix does not automatically result in a finding of a disability. 20 C.F.R. §§ 404.1525(d) and 416.925(d). Claimant has the burden to show through medical evidence, such as symptoms, signs, doctors opinions, and laboratory findings, that his or her condition meets the precise criteria set out in the listings for that particular impairment. See id.

at *1, 2000 WL 628049 (S.S.A.).  Obesity must be considered at each step

of the sequential evaluation process, except for step one.  Id. at *3.

With regard to step three, "[o]besity may be a factor in both

'meets' and 'equals' determinations."  Id. at *5.  SSR 02-1P states that

a listing is met if there is an impairment that, in combination with

obesity, meets the requirements of a listing.  Id.  Further, equivalence

will be found "if an individual has multiple impairments . . . no one of

which meets or equals the requirements of a listing, but the combination

of impairments is equivalent in severity to a listed impairment."  Id.

SSR 02-1P goes on to state:

> However, we will not make assumptions
> about the severity or functional effects
> of    obesity    combined    with    other
> impairments.    Obesity   in   combination
> with another impairment may or may not
> increase   the   severity   or   functional
> limitations of the other impairment.  We
> will   evaluate   each   case   based   on   the
> information in the case record.

Id. at *6 (emphasis added).

In the present case, despite the fact that claimant never

alleged obesity as an impairment[9], she contends that the ALJ erred in his

analysis because he failed to consider her obesity in combination with

her musculoskeletal impairment.  Implied is that, had the ALJ done so,

claimant's impairment would have equaled or met one of the listings.  As

an initial matter, the Court notes that claimant, who bears the burden

of proof at step three, does not specify which listing she believes the

---

[9]Claimant, who is five feet tall and weighs approximately 190 pounds (R.
359), never alleged obesity as a disability, (R. 82; see generally R. 354-69).
Claimant's obesity was first alleged to be an impairment by her counsel in a
memorandum to the ALJ dated January 9, 2008.  (R. 119).

combination of her impairments meets or equals. Despite this (and the fact that claimant never specifically claimed obesity as an impairment), the ALJ was obviously aware of her condition through claimant's medical records and explicitly considered it in step two when evaluating her impairments.

In the next step in the sequential process--step three--the ALJ (who, as stated above, was aware of all of claimant's impairments, including her obesity) made the specific finding that "[a]lthough severe, [claimant's] impairments are not intended, singly or in combination, with the specific clinical signs and diagnostic findings required to meet or equal the requirements set forth in [Appendix 1]." (R. 17) (emphasis added). Although the ALJ did not make specific reference to obesity under step three, the Court finds that he clearly considered all of claimant's impairments in combination, including obesity. See Bledsoe v. Barnhart, 165 Fed. Appx. 408, 411 (6th Cir. 2006) ("The language of 20 CFR § 404.1526 does not state that the ALJ must articulate, at length, the analysis of the medical equivalency issue."); Burch v. Barnhart, 400 F.3d 676, 683 (9th Cir. 2005)("An ALJ is not required to discuss the combined effects of a claimant's impairment or compare them to any listing in an equivalency determination unless the claimant presents evidence to establish equivalency.").

Further, to the extent claimant contends that the ALJ's failure to make specific reference to her obesity requires remand, she has failed to articulate how an explicit discussion of her obesity would have affected the outcome of her case. For example, she does note specify how her obesity impairs her ability to work. In Rutherford v.

<u>Barnhart</u>, 399 F.3d 546 (3d Cir. 2005), the claimant, like the claimant in the instant case, did not specifically allege obesity as an impairment; however, there were references to her obesity throughout the medical record.  The Third Circuit found that, even assuming that the references to her obesity put the ALJ on notice that it should be considered as a factor in the sequential analysis, remand was not warranted because the claimant failed to demonstrate how explicit consideration of her obesity would have affected the ALJ's analysis.  <u>Id.</u> at 553.  According to that court:

> [A] generalized response [by the claimant] is not enough to require a remand, particularly when the administrative record indicates clearly that the ALJ relied on the voluminous medical evidence as a basis for his findings regarding her limitations and impairments.  Because her doctors must also be viewed as aware of [the claimant's] obvious obesity, we find that the ALJ's adoption of their conclusions constitutes a satisfactory if indirect consideration of that condition.

<u>Id.</u> at 553; <u>see also</u> <u>Skarbek v. Barnhart</u>, 390 F.3d 500, 504 (7th Cir. 2004)(per curiam).  Likewise, the Court finds that any remand for explicit consideration of claimant's obesity would not affect the outcome of the case.  <u>Compare</u> <u>Stemple v. Astrue</u>, 475 F. Supp. 2d 527, 539-40 (D. Md. 2007) (distinguishing <u>Skarbek</u>).

### D.  Existence of Jobs Identified by the VE

Finally, claimant contends that the ALJ erred at step five in relying on the testimony of the VE because the jobs identified by the VE

are nonexistent. According to claimant, "[t]he need to alternate sitting and standing is considered to be such a severe work restriction according to [SSR 83-12, 1983 WL 31253 (S.S.A.)] that only professional jobs are indicated as possible." (Doc. #13 at 7).

At the fifth step in the sequential analysis, the ALJ must determine whether a claimant can perform any other work available in significant numbers in the national economy, considering the claimant's age, education, and past work experience. 20 C.F.R. §§ 404.1566 and 416.966. Step five is reached when the claimant is not engaged in substantial gainful activity and has a severe impairment that does not meet or equal the listings but prevents a claimant from performing past relevant work. In assessing a claimant's ability to perform other work within the economy, the ALJ will look at exertional limitations, those limitations or restrictions which impact only strength activities, and non-exertional limitations, those limitations and restrictions which impact non-strength activities such as concentration and ability to follow instructions. 20 C.F.R. §§ 404.1569 and 416.969. At step five, the burden of proof shifts to the Commissioner to establish that claimant has the ability to perform other work. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).

Normally, if a claimant's RFC demonstrates that she suffers only from exertional limitations, the ALJ will consult the medical-vocational guidelines found at 20 C.F.R., Pt. 404, Sbpt. P, App. 2, to determine whether there are jobs existing that the claimant would be able to perform based on the claimant's RFC. Walker v. Bowen, 889 F.2d 47,

49 (4th Cir. 1989). However, if a claimant suffers from both exertional and non-exertional limitations, and the non-exertional condition affects the claimant's RFC to perform work of which he is exertionally capable, then the ALJ must utilize the assistance of a VE in assessing whether there are jobs in significant numbers that the claimant could perform. Id. When a VE is called to testify, the ALJ's function is to pose hypothetical questions that accurately represent the claimant's RFC based on all evidence in the record and a fair description of all the claimant's impairments so that the VE can offer "relevant or helpful" testimony. Id. at 50.

In the present case, the ALJ consulted a VE. At the hearing, the ALJ posed a hypothetical of a person identical to claimant in age, education level, past work experience, and RFC (including the sit/stand option), and asked whether there would be jobs such a person could perform. (R. 367). The VE testified that such a person could perform jobs such as cashier (3,000 positions locally, 200,000 nationally); packer (1,500 positions locally, 150,000 nationally); and inspector (1,000 positions locally, 75,000 nationally). (R. 367-68). When questioned further, the VE testified that such jobs were unskilled, comported with the Dictionary of Occupational Titles (DOT) (with the exception of the sit/stand option which the DOT does not address), and full-time. (R. 368). The VE testified that he made the determination that such jobs would allow for the sit/stand option based on his experience in job placement. Id.

As an initial matter, to the extent claimant contends that SSR 83-12 states that the _only_ light work jobs with a sit/stand option are professional in nature, claimant is incorrect. SSR 83-12 does not speak in such absolute terms but, instead, recognizes that unskilled jobs "are particularly structured so that a person cannot ordinarily sit or stand at will" and that such jobs are typically professional or managerial ones. SSR 83-12, 1983 WL 31253, at *4 (S.S.A.). Accordingly, "[i]n cases of unusual limitation of ability to sit or stand, a [VE] should be consulted to clarify the implications for the occupational base." Id.

In the present case, the ALJ consulted with a VE as instructed by SSR 83-12, posed a hypothetical that contemplated the sit/stand option, and the VE responded. The ALJ was entitled to rely on the VE's calculations. Walls v. Barnhart, 296 F.3d 287, 291 (4th Cir. 2002) (SSR 83-12 "does not prescribe a formula for assessing what jobs are avialable, and the VE's inclusion of sedentary jobs does not mean he disregarded SSR 83-12's recognition that a sit/stand option negatively impacts the number of unskilled jobs available.").

## V.  RECOMMENDATION

For the foregoing reasons, the Court recommends that the final decision of the Commissioner be affirmed.

## VI.  REVIEW PROCEDURE

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1.     Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date of mailing of this Report to the objecting party, 28 U.S.C. § 636(b)(1)(C), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure.

2.     A district judge shall make a _de novo_ determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in waiver of right to appeal from a judgment of this Court based on such findings and recommendations. Thomas v. Arn, 474 U.S. 140 (1985); Carr v. Hutto, 737 F.2d 433 (4th Cir. 1984); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

_____/s/_____

**James E. Bradberry**
**United States Magistrate Judge**

**Norfolk, Virginia**
**January 28, 2010**